OPINION OF THE COURT
Joseph M. White, J.
The court, having held a suppression hearing on August 22, 1978, reserved decision after hearing testimony of the People’s *290 witness only, no defendants’ witnesses having been heard, and requested memoranda of law from both the People and the defendants and now, the court having reviewed the defendants’ papers filed in support of this motion to suppress and having reviewed all the People’s papers filed in opposition thereto, the court concludes that the constitutional issue is framed thusly:
A. That the counsel for the defendants contend that the defendants’ Fourth Amendment rights under the United States Constitution were violated by members of the New York State Police when said officers made certain observations of the defendants in a public restroom in the Ardsley Service Area. The defendants argue that the sexual acts complained of, if done by the defendants were done while the defendants had a "reasonable expectation of privacy” at the specific location of commission and that the defendants relied on that reasonable expectation of privacy and that their constitutional rights to privacy guaranteed by the Fourth Amendment were violated. The defendants further contend that the surveillance constituted an "illegal search” and was done without probable cause.
The Fourth Amendment of the United States Constitution, made applicable to State action by the Fourteenth Amendment, reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
The court now makes the following findings:
1. That the area where the consensual sodomy allegedly occurred is not protected by the Fourth Amendment guarantees for the acts complained of took place admittedly in front of the public urinals in an area usable by all male members of the public before, during, and after, the alleged consensual sodomy took place. There are no locks on the two sets of entrance doors into this men’s room and at any moment during the sodomy’s commission any male patron could have walked in to use the facilities, even reasonably, those urinal bowls possibly blocked from access by the ongoing sodomy. In short, this area of occurrence was still a public place fully accessible to the eyes and use of the male public. The reasonable expectancy of privacy generated by the enclosed nature of *291 the whole bathroom facility was only to exclude the using public — male users — from the gaze of the nonusing public.
In defendants’ cited case Kroehler v Scott (391 F Supp 1114) a 1975 decision, the court said that stalls having no door was immaterial, as a stall — constructed for the private use of the user, was not a place of public access while in use. This reasoning cannot be extended to the area of the six urinals which as a single area, with no partitions between, is usable by as many members of the male public at the same time as there are urinals to accommodate them.
The trooper’s testimony showed that prior to the sexual act and while the defendant participants were present in this public restroom several uninvolved members of the public entered and used the same urinal facilities. The fact that the sodomy took place without a member of the public walking into this restroom during its commission is in no way germane to an argument that the defendants had privacy during the commission and that this "privacy” was violated by the watching trooper. At any instant it is plain that a member of the public could have walked into the restroom and, have seen, in plain sight the commission of this sexual act. This fact alone destroys utterly the defendants’ contention that the trooper’s presence violated their "reasonable expectation of privacy”.
 It is this court’s belief that sexual acts between consenting adults, heterosexual and homosexual, done in private are absolutely beyond the right of the State to interfere but the "public” has rights, too. If in fact, as in the defendants’ cited Triggs case (People v Triggs, 8 Cal 3d 884), the California Supreme Court wishes to protect commode stalls with and without doors, this court can acknowledge that court’s reasoning without necessarily finding same persuasive. However this court will not analogize such reasoning and extend it to any area of multiple unenclosed urinals where several or a dozen or more male members of the public may congregate to use same at the same time. The public’s right to expect privacy in such locations is reasonably limited to the performance of excretionary and ablutional acts indigenous to a restroom, never for sexual acts of any nature.
There are limits to even privacy and it is clear to this court that the "common area” of the urinals does not have Fourth Amendment protection even while the court finds the reasoning of the Katz case (389 US 347), cited by the defendants, as persuasive. The defendant Katz justifiably relied on *292 the privacy of the phone booth and the telephonic transmission for when the booth was in use no other member of the public could have also used it so the defendant’s expectation of privacy was reasonable.
The court has mentioned, above, the rights of the public. Free speech is a constitutionally protected right and has been so held in numerous United States Supreme Court decisions over the years. But even here there are reasonable limits. One has only to remember the famous court decision that "free speech” does not entitle a member of the public to falsely yell out, "Fire, Fire” in a theatre crowded with patrons.
So, too, there must be limits on privacy. What is sought to be called private must have the appearance and the indicia of privacy. In short, the area of privacy so claimed must be an area generally understood to be private, not usable by any person not a member of the group, one or two or more, using the particular location. It should be an area physically controllable by doors, locks, or even boundaries of distance possibly, that precludes its use and possibly observation by the public who are strangers to the act or the meeting or the conference, et cetera.
The particular area where the alleged sodomy took place is a gasoline filling station, way stop, or rest area, with comfort stations, on the New York State Thruway. Vehicles of all types stop for gas and/or to use the restroom facilities. This court recoils from the possibility, nay the probability, that members of the public should walk into these public restrooms and view the complained of tableau occurring in this public area of the urinals. While the viewing public could be adult it is as lief a possibility that the sodomy could be witnessed by infants of tender years sent to this restroom unaccompanied by their female parent who reasonably could expect that this sort of prohibited behavior was not to be observed in a public restroom.
2. The defendants raise the argument that the troopers did not have "probable cause” to put the restrooms under surveillance. This court finds the probable cause was spelled out by the complaints of the public that sexual acts were occurring in this restroom. This particular case at bar is only one of numerous charges of like nature that were summoned before this court during the first several months of 1978. In short, this restroom had become a known trysting place for homosexual conduct that attracted men of this sexual preference from *293 miles away. This court is struck with the conjecture, the possibility, that some of the attraction of this trysting location was the danger evoked by the restroom’s facility as a "public restroom”; for there was always the possibility, in fact, that the act might be observed by an innocent member of the public entering the facility during commission. The court is at a loss to fathom why, if the defendants truly wanted privacy, they did not move several feet away to the privacy of a closed and locked commode stall.
The particular defendants in the case at bar were queried by this court in preliminary proceedings as to their economic status and the court remembers that both defendants have good positions and could have, as lief, rented a motel room if they wanted privacy. They chose the forum of the alleged sexual act. They cannot now dress the location with the accoutrements of privacy and claim such privacy was violated.
3. The defendants claim that the window scratch used by the trooper constituted an illegal search. This court cannot agree. Let us analogize. Suppose that a public area such as a woodland dell in a public park had complaints of this nature and the trooper stood behind a tree to observe and after doing so, arrested the participants. Would the trooper have conducted an "illegal search”? I think not, for the area, even if in a sense less visible because of heavy foliage, is still in the walking or usage area usable by the general public and the police need not get a judicially sanctioned warrant to watch such location. It is the same in this instance; the police were observing a "public area” of the restroom and so the "search” was not illegal. However, if the trooper was observing into closed stalls this court would find such closed stalls as constitutionally protected, even though this court does not believe that such sexual activity should be consummated there. There is a time and a place for everything.
4. The People argue and the court agrees that the New York rule is that the defendant carries the burden of proof to sustain his claim of illegal search although the burden of going forward is on the People (People v Baldwin, 25 NY2d 66; People v Malinsky, 15 NY2d 86) to quote the People’s position: "In the instant case, the People fulfilled their burden of going forward through the testimony of Troop[er] Kovac. The defendants however, offered absolutely no evidence whatsoever. One of the most important facets of the defendants’ argument was never offered into evidence — the defendants never testified *294 that, in fact, they had a reasonable expectation of privacy and, in fact, justifiably relied on same. Not one witness was called by the defense and not one piece of evidence was offered by the defense. They, therefore, utterly failed to carry their burden of proof and, thus, their motion to suppress must be denied (People v Berrios, 28 NY2d 361).” The court agrees with the People’s contention in this respect and so, on this additional ground also, the court denies the defendants’ motion to suppress.