THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. HAYS MORGAN *et al.*, Defendants-Appellees.

Fifth District    No. 5—88—0596

Opinion filed July 16, 1990.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellees.

JUSTICE RARICK delivered the opinion of the court:

Defendants Hays Morgan and Joseph Bourgeois were charged by information with possession of cocaine. Both filed motions to quash their arrests and suppress evidence. At the hearing on Bourgeois' motion, the court indicated that its ruling would be equally applicable to Morgan's motion. John Sandage testified that on September 17, 1987, he was a Saluki Patrol officer on foot patrol in the student center. Upon entering a first-floor rest room to use the facilities, Sandage heard two voices coming from one of the stalls. Looking down he saw only one pair of feet, but upon coming closer and looking under the door he observed a second pair of feet on the toilet seat. Looking through the space between the door and the wall, Sandage saw two people. He then left and radioed Saluki patrolman Jeff Block. Block had been a member of the Saluki Patrol for about two years and testified that, in his experience, muggings and other crimes were frequently perpetrated in bathroom stalls. Upon arriving at the scene, Block entered the rest room, identified himself and Sandage as members of the Saluki Patrol, and requested the defendants to open the stall door. The defendants did not respond, but Block testified that he heard paper rustling. Block then looked through the space between the wall and the door and saw two people. He proceeded to an adjacent stall, climbed onto the toilet seat and looked into the stall occupied by the defendants. Block saw Bourgeois sitting on the toilet tank with his feet on the seat, and Morgan standing facing him. Block also saw the defendants pass a piece of paper between them, which, according to Block's testimony, contained a white powdery substance.

Bourgeois moved toward the toilet, but Block grabbed him and ordered both defendants out of the stall. As Bourgeois was exiting the stall, he wadded up the piece of paper and put it in his back pocket. Once the defendants had exited the stall, Block asked them if there was anything he should see. Bourgeois said yes, reached into his back pocket, pulled out a square piece of paper and laid it on the counter. As he did so, a white powder fell out of it. Block and Sandage then called the SIU police, who arrested the defendants.

After hearing arguments on defendants' motions, the trial court granted the motions to suppress, ruling that Block had no probable cause to believe a crime was being committed and that looking over the partition between the stalls constituted an unreasonable intrusion.

The State initially argues that Block's actions did not constitute a search. Instead, the State maintains, Block made his observation from a public vantage point where he had a legal right to be and which rendered the defendants' activities clearly visible.

In support of its position, the State cites *California v. Ciraolo* (1986), 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809. In *Ciraolo*, police officers received information that the defendant was growing marijuana in his yard, but were unable to observe the marijuana from the street because the defendant's property was surrounded by both a six-foot fence and a 10-foot fence. Later that day, two officers flew over the defendant's house in a private plane and spotted the marijuana plants. The Supreme Court ruled because the officers were in navigable airspace and the plants could be observed from the air, no search warrant was necessary. The court stated that it was not clear that the defendant manifested a subjective expectation of privacy from *all* possible observations and that the police officer's observations were made "from a public vantage point where he has a right to be and which renders the activities clearly visible." 476 U.S. at 213, 90 L. Ed. 2d at 216, 106 S. Ct. at 1812.

We believe *Ciraolo* is readily distinguishable from the present case. Critical to the court's decision in *Ciraolo* was the fact that the officers made their observations from a public vantage point. Contrary to the State's assertions, Block's observations were not made from a public vantage point. A person entering a rest room stall manifests an intent to shield his activities from all observation, and a toilet in an adjacent stall is hardly a public vantage point.

■■ Fourth amendment protections arise when an individual holds an expectation of privacy which society accepts as reasonable. (*Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.) While there are no Illinois cases addressing whether an individ-

ual in a public rest room stall has a protectable privacy interest, cases from other jurisdictions have answered this question in the affirmative. (*People v. Tanner* (1988), 42 Ohio App. 196, 537 N.E.2d 702; *People v. Mercado* (1986), 68 N.Y.2d 874, 508 N.Y.S.2d 419, 501 N.E.2d 27; *State v. Biggar* (Hawaii 1986), 716 P.2d 493; *State v. Bryant* (1970), 287 Minn. 205, 177 N.W.2d 800.) These cases and simple common sense persuade us that an individual in a closed public rest room stall has a reasonable expectation of privacy protected by the fourth amendment.

■ The fourth amendment does not prohibit all intrusion on the individual's privacy, only unreasonable intrusions. (See, *e.g., Oliver v. United States* (1984), 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735; *United States v. Chadwick* (1977), 443 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476.) We must determine, therefore, whether Block's search was reasonable. A search is justified where there is probable cause to believe a crime has been committed, is being committed, or is about to be committed. (*People v. Jones* (1967), 38 Ill. 2d 427, 231 N.E.2d 580.) Probable cause for search exists where, based upon the knowledge and experience of the officer in question, articulable, objective facts exist which indicate the existence of criminal activity is more probable than not. (*People v. Exline* (1983), 98 Ill. 2d 150, 456 N.E.2d 112.) The existence of probable cause must be determined from the standpoint of the arresting officer. *People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498.

■ The State concedes that an individual in a rest room stall has a reasonable expectation of privacy, but, citing *Mercado*, maintains that the facts in this case were such that Block had probable cause to search the stall. The facts in the present case are virtually identical to those in *Mercado*. In that case, a port authority officer was on duty at New York's Kennedy Airport when a man approached him and informed him that there were two men in a stall in the rest room. Upon entering to investigate, he saw only one stall with a closed door and could see one pair of feet. Upon coming closer he heard two voices coming from the stall. Looking through the space between the door and the frame, he observed the defendant sitting on the flushing unit with his feet resting on the bowl. The officer then entered the adjoining stall, stood on the toilet bowl, and looked into the occupied stall. The defendant was in the same position as before, and another man was standing with his back to the door and had an envelope containing a white powdery substance in his hand. He ordered both men out of the stall and, upon searching them, discovered 19 bags of heroin.

Mercado argued, as do the defendants here, that looking into the

stall constituted an unreasonable search. The court rejected his argument, finding that while a person in a rest room stall has a reasonable expectation of privacy, the presence of two persons in a single-person stall justified the intrusion where the surrounding circumstances made it apparent that they were not using the stall for its intended purpose. The court pointed out that while human imagination could conceive of circumstances where two persons were legitimately using a one-person stall, the test for determining probable cause did not require proof to a substantial certainty or beyond a reasonable doubt. "Based on the *** objective facts *** and the reasonable inferences to be drawn therefrom, it was 'more probable than not' that criminal activity was taking place inside that stall." *Mercado*, 68 N.Y. 2d at 877, 508 N.Y.S.2d at 422, 501 N.E.2d at 30.

The facts in *People v. Tanner* are also similar. A Columbus police department officer was working special duty at a theatre and was assigned to work in the rest rooms during intermission. Upon entering the rest room, the officer observed two pairs of legs in a closed stall and heard a sniffing noise. The officer peered over the door and observed the defendant and another man. The defendant had a straw up his nose and was snorting a white powder which was later identified as cocaine. The officer thereupon pushed open the unlocked door and arrested the defendant. On appeal, the defendant argued that the officer had no probable cause to search. On affirming the conviction, the court held that "an individual's subjective expectation of privacy is limited when two people are in a stall designed for use by one person. [Two people in a rest room stall designed for use by one person] cannot reasonably expect to be free from intrusion when the outward appearance they give is that they are using the single stall for a purpose other than for what it was intended." *Tanner*, 42 Ohio App. 3d at 199, 537 N.E.2d at 705.

In the present case, Block saw only one pair of legs but heard two voices. Upon closer inspection, he observed two persons in the stall and it was clear from their positions that they were not using the stall for its intended purpose. Given the objective facts confronting Block, and the reasonable inferences which he could draw based upon his knowledge and experience, he could reasonably conclude that it was more probable than not that a crime was being committed and so had probable cause to search.

The State also argues that the trial court used a higher standard than "more probable than not" in determining that there were insufficient articulable facts to warrant a person of reasonable caution to believe a crime was being committed. The court's written findings of

fact and law, however, clearly demonstrate that the court used the proper standard.

█ Defendants further argue that even if the search was lawful, the trial court's order suppressing the evidence should still be affirmed. Defendants point out that although Block testified that he saw a white powdery substance, the court did not specifically make such a finding, but found only that Block saw defendant Bourgeois holding a piece of paper. Block's report of the incident makes no mention of seeing any white powder when he first looked into the stall, but does indicate that the paper Bourgeois produced from his pocket contained a white powdery substance. Defendants contend that the court's failure to specifically find that Block saw a white powdery substance when he looked into the stall should be construed as a finding that he did not see it. Even if we accept defendants' argument, such a finding would clearly be against the manifest weight of the evidence. Block's testimony that he saw the white powder when he first looked into the stall is uncontradicted. Based upon a review of the record, we believe the defendants' contention is without merit.

The judgment of the circuit court of Jackson County is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

WELCH and CHAPMAN, JJ., concur.