688 A.2d 145

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. WILLIE BOYNTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 13, 1996—Decided February 13, 1997.

---

Before Judges DREIER, D'ANNUNZIO and NEWMAN.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Cecelia Urban*, Assistant Deputy Public Defender, of counsel and on the brief).

*John Kaye*, Monmouth County Prosecutor, attorney for respondent (*Mark P. Stalford*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

This appeal raises an issue of first impression concerning the constitutional validity of a search and seizure in a single-occupancy, public rest room. We affirm because defendant's reasonable expectation of privacy was not violated by the police entry into an unlocked, single-occupancy rest room where defendant was engaged in illegal narcotic activity with another person.

Following the denial of his motion to suppress, defendant Willie Boynton pled guilty to third-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35–5b(3) and fourth-degree resist-

ing arrest, *N.J.S.A.* 2C:29–2a. Defendant was sentenced to concurrent five-year and eighteen-month prison terms. Defendant also pled guilty on a second unrelated indictment that charged him with third-degree possession of controlled dangerous substances, *N.J.S.A.* 2C:35–10a and third-degree possession of controlled dangerous substances with intent to distribute, *N.J.S.A.* 2C:35–5b(3). He was sentenced to a three-year prison term to run consecutively with the terms imposed for the charges on appeal.

The relevant facts are these. On September 29, 1993, officers from the Asbury Park Police Department, in conjunction with an officer from the Bradley Beach police, were searching for an individual for whom an arrest warrant had been issued on a domestic violence complaint. The person was known to frequent the Clover Club bar in Asbury Park. After searching the main part of the bar, one of the officers went to see if the fugitive was in the rest room. He pushed against the door, meeting with some resistance. He then pushed the door again, and it opened. The officer could not tell what caused the resistance. He thought that there was a spring providing resistance designed to automatically close the door. No one testified that the door was locked, that the door had a lock that was not engaged, that an individual was holding the door shut, or that the door was not equipped with a lock at all.

In describing the bathroom itself, the officer said that it was approximately four feet deep by seven feet long with a toilet at the far end and a sink. When he opened the door, he saw defendant and another individual facing each other. Defendant was holding a plastic bag, similar to a sandwich bag, in his hand, and a dollar bill was falling to the floor. Based on his experience involving over one thousand narcotics arrests, the dollar bill and plastic bag indicated to the officer that there was some type of narcotic activity taking place.

The officer attempted to grab the bag out of defendant's hand. The defendant resisted, holding the bag to his midsection. A scuffle ensued. The officer was able to see a white powdery

substance of an amount approximately the size of a golf ball in the bag.

Defendant tried to raise the bag to his mouth. The officer prevented him from doing so by grabbing defendant from behind. Noticing that defendant's hand was dangerously close to the officer's weapon, the officer struck the defendant in the head two times, causing him to fall to the floor of the bathroom. From his knees, defendant thrust the plastic bag into the toilet. Officers pulled defendant away from the toilet and subdued him. The officer retrieved the bag from the toilet. The bag contained cocaine.

Defendant moved to suppress the evidence on the grounds that it was obtained in an illegal, warrantless search. Defendant asserted that he had a reasonable expectation of privacy in the public rest room which the police violated by a forcible entry. Defendant contends, because the police were not lawfully in the rest room, that the search could not be justified under the plain view exception. Defendant also asserted that the State had not shown that there was any reasonable basis to believe that the fugitive was in the rest room or that it was necessary to enter forcibly to arrest him. In opposing the motion, the State argued that the police had probable cause to arrest defendant based on the officer's observation of a drug transaction in the rest room. The narcotics were admissible because they were in plain view, had been abandoned by defendant, and the seizure was justified by exigent circumstances.

In denying the motion to suppress, the trial judge found:

> Defendant did not avail himself of the privacy a stall might afford but instead conducted the alleged narcotics transaction in the common area of an unlocked public restroom. Defendant could not have had a reasonable expectation of privacy in such a location. And, therefore, Officer McDonald did not violate defendant's Fourth Amendment rights by simply opening the restroom door.

On appeal, defendant raises the following point and subheadings, contending the motion to suppress the evidence was improperly denied:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS; THE CDS FOUND IN DEFENDANT'S POSSESSION WAS INADMISSIBLE BECAUSE IT WAS OBTAINED IN VIOLATION OF HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, *U.S. CONST.*, AMENDS. IV, XIV; *N.J. CONST.* (1947), ART. I, PAR. 7.

A. DEFENDANT'S REASONABLE EXPECTATION OF PRIVACY WHILE IN THE MEN'S ROOM WAS VIOLATED WHEN THE POLICE ENTERED AND CONDUCTED A WARRANTLESS SEARCH.

1. Occupants of a Public Bathroom Designed For Single–Person Occupancy Have a Reasonable Expectation to Privacy Therein.

2. The Suppression Motion Was Denied Based On The Erroneous Finding That This Men's Room Was Designed For Multiple Occupancy.

B. ABSENT PROBABLE CAUSE TO BELIEVE THAT MONTALVO WAS IN THE MEN'S ROOM AT THE CLOVER CLUB, THE POLICE COULD NOT SEARCH THE BATHROOM UNDER AUTHORITY OF THE WARRANT FOR HIS ARREST.

C. THIS SEARCH WAS NOT JUSTIFIED UNDER THE "PLAIN VIEW," "ABANDONMENT" OR "EXIGENT CIRCUMSTANCES" EXCEPTIONS TO THE SEARCH WARRANT REQUIREMENT.

1. Since The Police Were Not Rightfully In The Men's Room When They Observed The Evidence, The "Plain View" Exception to the Warrant Requirement Did Not Apply.

2. Defendant Did Not Voluntarily Abandon The Contraband; Rather, His Discarding Of It Was The Produce Of The Illegal Search and Seizure.

3. Exigent Circumstances Created By The Police In a Warrantless Search Will Not Justify Admission Of Evidence Seized In That Search.

In support of his overall contention that the evidence seized at the Clover Club should have been suppressed, defendant contends that the motion judge incorrectly found that (1) defendant was not entitled to a reasonable expectation of privacy in the Clover Club rest room; (2) that the police had both the right and duty to search the club's rest room based on an arrest warrant for another individual; and (3) that the plain view, abandonment and exigent circumstances exceptions to the warrant requirement made this particular search a lawful one. Defendant asserts that he did have a reasonable expectation of privacy in the rest room and that the arrest warrant did not authorize the search of that area. Because the officer was not properly present in the rest room, defendant asserts that the exceptions to the warrant requirement would not validate this search and seizure.

No New Jersey cases have addressed the issue of public rest room searches. Other states have had occasion to address the issue of what degree of privacy is due an individual in a public rest room. Generally, there is no absolute right to privacy in a public rest room. *See* Michael R. Flaherty, Annotation, *Search & Seizure: Reasonable Expectation of Privacy in Public Restroom,* 74 *A.L.R.4th* 508, 513–15 (1989) [hereinafter Flaherty]. Courts recognize different degrees of Fourth Amendment protection in rest rooms. In making this determination courts take into account factual considerations such as the layout of the rest room, the area in the rest room where the activity takes place and, to some degree, the method of surveillance employed by the police. *See* Wayne R. La Fave, *Search and Seizure: A Treatise on the Fourth Amendment,* s. 2.4(c)(1996); Flaherty, *supra,* at 513–15. It is in these diverse factual settings that whether an individual possesses a reasonable expectation of privacy sufficient to trigger constitutional protection is decided. However, the fact that other states have a significant body of search and seizure law dealing with rest rooms does not, however, provide a great deal of clarity. Different states may interpret their own constitutions to provide varying degrees of protection in this area, and their judicial results vary. Additionally, no case has been reported comparable to our situation where a single-occupancy public rest room, locked or unlocked, has been the location of the search and seizure.

It is generally accepted that individuals are due some degree of privacy in a public rest room. Due to the nature of the events that take place there, this finding is axiomatic. However, the design and use of the rest room has an effect on the degree of privacy accorded. For example, excessive time spent in a rest room and the fact that a rest room was located in a prison visitor's area are both factors which have been used to negate an individual's expectation of privacy in a rest room. *See generally* Flaherty, *supra,* at 519–21.

More germane to the case *sub judice* is the distinction which courts draw between rest room stalls and rest room common areas

and the court's consideration of the nature of the activity taking place in the rest room. Individuals performing illegal activities in the common area of a public rest room can not possess a reasonable expectation of privacy. *See, e.g., People v. Lynch,* 179 *Mich.App.* 63, 445 *N.W.*2d 803, 807 (1989) (permitted to monitor or videotape the common area); *People v. Heydenberk,* 171 *Mich. App.* 494, 430 *N.W.*2d 760, 762 (1988) (finding no right to privacy in the "common area of the rest room"); *People v. Anonymous,* 99 *Misc.*2d 289, 415 *N.Y.S.2d* 921, 924 (Justice's Court 1979) (surveillance of rest room based on citizen complaints was proper because activity took place in the "public area of the urinals" accessible to any member of the public); *see generally* Flaherty, *supra,* at 522–26.

The use of a stall in a public restroom affords a greater degree of privacy but not an absolute one. When a stall is equipped with a door, the general rule seems to be that individuals in the stall are accorded a reasonable expectation of privacy, unless they are engaged in illegal activity that is apparent to the casual observer who is rightfully in a common area of the rest room. *E.g., United States v. White,* 890 *F.*2d 1012 (8th Cir.1989), (no reasonable expectation of privacy for illegal activity that could be viewed under the stall door); *cert. denied,* 497 *U.S.* 1010, 110 *S.Ct.* 3254, 111 *L.Ed.*2d 763 (1990); *Barron v. State,* 823 *P.*2d 17 (Alaska.Ct.App.1992) (justifying, under the Alaska Constitution, further investigation by police officer when officer, validly in the common area of a restroom, saw two individuals using a single stall not for its intended purpose); *People v. Morgan,* 200 *Ill.App.*3d 956, 146 *Ill.Dec.* 561, 558 *N.E.*2d 524, (hearing two voices coming from a single rest room stall was sufficient justification for a police officer to look into the stall through the gap between the door and the door frame) *appeal denied,* 133 *Ill.*2d 567, 149 *Ill.Dec.* 331, 561 *N.E.*2d 701 (1990). Other courts have held that bathroom stalls which are not equipped with doors do not provide the same reasonable expectation of privacy. *E.g., Young v. State,* 109 *Nev.* 205, 849 *P.*2d 336 (1993) (no subjective or objective reasonable expectation of privacy in a stall without a door); *Buchanan v.*

*State,* 471 *S.W.*2d 401 (Tex.Crim.App.1971), (finding occupants of bathroom stalls were entitled to the degree of privacy that the design of the stall reasonably provided, *i.e.,* stalls with doors provided a reasonable expectation of privacy while stalls lacking doors did not.), *cert. denied,* 405 *U.S.* 930, 92 *S.Ct.* 984, 30 *L.Ed.*2d 804 (1972). *But see, e.g., People v. Triggs,* 8 *Cal.*3d 884, 106 *Cal.Rptr.* 408, 506 *P.*2d 232 (1973); *overruled on other grounds, People v. Lilienthal,* 22 *Cal.*3d 891, 150 *Cal.Rptr.* 910, 587 *P.*2d 706 (1978); *State v. Casconi,* 94 *Or.App.* 457, 766 *P.*2d 397 (1988) (stating lack of stall doors does not lead to abandonment of all privacy rights, finding that clandestine police surveillance of doorless toilet stalls significantly impaired individual's expectation of privacy). *see generally,* LaFave, *supra,* § 2.4(c); Flaherty, *supra,* at 526–39.

*State v. Berber,* 48 *Wash.App.* 583, 740 *P.*2d 863 (1987) is instructive. There, the rest room of the "Past–Time Tavern" had a similar design to the one in the Clover Club, except there was a urinal affixed to the wall in addition to a toilet. The two fixtures were divided with a small partition, but the toilet was not fully enclosed. *Id.,* 740 *P.*2d at 865. Police entered this rest room, aware that it was an area where narcotics were commonly used, to conduct their nightly investigation. *Ibid.* Defendant was standing at the toilet with his hands clutched against his chest and his back to the officers. One of the officers, who was several inches taller than defendant, looked over defendant's shoulder and saw what he believed to be cocaine in defendant's hand. *Id.* at 865–66. Defendant was arrested and moved to suppress the evidence. *Id.* at 866. Expressing a principle that New Jersey courts have reached regarding its own Constitution, the intermediate Appellate Court noted that Washington State's constitution traditionally provides a greater degree of protection to its citizens than the Federal Constitution requires in the area of search and seizure. *Ibid.; see State v. Pierce,* 136 *N.J.* 184, 642 *A.*2d 947 (1994). Recognizing as much, the *Berber* court cited four considerations that would inform its analysis.

These considerations are: (1) society's belief that certain areas are ordinarily understood to afford personal privacy; (2) the character of the area in which the claimed privacy interest is asserted; (3) the way in which the area is used; and (4) the method, means, or manner by which the government agents intrude in the area.

[*Id.* at 588, 740 *P.*2d 863]

The court found that society would reasonably assume that an area within an occupied toilet stall is private. Even though the toilet was not completely enclosed, the expectation of privacy could still be retained. However, while complete enclosure would rise to the highest degree of protection, the openness of this toilet led to a diminished expectation of privacy. *Id.*, 740 *P.*2d at 867. The court further found that defendant's expectation of privacy could not be considered reasonable because the police saw no more than any member of the public who entered the bathroom. Additionally, the court found that defendant's misuse of the area further diminished his expectation of privacy, finding that the court should consider what values society would logically protect. *Id.* at 868–69. Finally, the court considered whether the method of surveillance utilized by the authorities, if unchecked by constitutional considerations, would diminish the amount of privacy and freedom afforded citizens to an extent that is inconsistent with a free and open society. *Ibid.* The court concluded that entering a public rest room, in contrast with examples of clandestine surveillance, was not an unreasonable intrusion. *Ibid.*

The facts here are strikingly similar to those in *State v. Berber.* The rest room was a public area, which, unless locked, could be entered by any member of the public, including the officer in question. What the officer saw was no more than any member of the public who entered the rest room. There was no indication to the officer that the rest room was occupied other than resistance of the door which reasonably could have been attributed to a spring used to keep the door closed. No clandestine surveillance preceded the entry of the officer into the rest room. Defendant's misuse of the area by having another person in the rest room with him further diminished his own expectation of privacy. There was

no surveillance engaged in nor was the entry into the rest room part of a continuing investigation. It was simply the result of the effort to locate a fugitive on an arrest warrant who was known to frequent this particular bar. No clandestine activity was involved at all.

Defendant asserts that an individual is entitled to the amount of privacy that the design of a particular rest room affords, citing *Buchanan, supra,* 471 *S.W.*2d at 404. As noted, the rest room at the Clover Club was four feet by seven feet and was designed for single occupancy. The door was unlocked, and no verbal notice was given that the rest room was occupied. These facts still prompt defendant to argue that the design of the rest room provides its occupant with a reasonable expectation of privacy that society would recognize. Consequently, he urges that the officer's entry into the rest room was a violation of this right and the evidence seized should be suppressed.

*Buchanan, supra,* is factually distinguishable. There, the police undertook clandestine surveillance; the defendant locked the door to the bathroom stall; and the police expected to encounter criminal activity. None of these facts are present here. Rather, defendant conducted criminal activity in a public rest room while failing to lock or block the door. Defendant had to be aware of the possibility that an individual could enter the rest room so the commission of a crime in this rest room was little different from the commission of a crime on a seemingly deserted public street. As a consequence, defendant could not entertain a reasonable expectation of privacy.

Defendant asserts that the motion judge's denial of his motion to suppress was based on an erroneous factual finding. Defendant contends that the motion judge found that defendant engaged in illegal activities in the "common area" of the rest room when, in fact, there was no "common area." The rest room was designed for single occupancy and therefore did not have a "common area." We disagree with defendant's characterization of the motion judge's conclusion. While it is true that the motion judge made

reference to the common area and the fact that defendant did not seek the privacy of a stall when of course none existed, these considerations were not the linch pin of the motion judge's decision. The motion judge ruled that there was no reasonable expectation of privacy in the rest room because the door lock was not engaged and any member of the public could have entered the rest room and viewed the illegal activity. The layout of the rest room was not critical to the motion judge's ruling.

Defendant also contends that absent probable cause to believe the fugitive was in the Clover Club's rest room, the officer did not have the right and duty to search the rest room. Defendant asserts that an arrest warrant authorizes the police to enter an individual's home to search for him, but not the home or premises of a third party, citing *Steagald v. United States,* 451 *U.S.* 204, 214–15, 101 *S.Ct.* 1642, 1649, 68 *L.Ed.*2d 38, 46–47 (1981). It is further maintained that the police are only permitted to enter the home or premises of a third party when there is probable cause to believe that the individual is on those premises and the attendant circumstances give rise to an exception to the warrant requirement. *See State v. Schelle,* 126 *N.J.Super.* 596, 600, 316 *A.*2d 30 (App.Div.1974); *Fisher v. Volz,* 496 *F.*2d 333 (3d Cir.1974). Defendant concedes that the police were permitted to enter the Clover Club as an establishment open to the general public. However, defendant argues the police could not properly enter a single occupancy rest room without probable cause.

In our view, *Steagald* is inapplicable because that case addressed a search of a private residence of a third party unlike a public tavern such as the Clover Club. The Fourth Amendment does not prohibit reasonable searches. *U.S. Const.* amend. IV. The officer did not need probable cause to look for the fugitive in the rest room when he was not found to be in the main area of the club. It was entirely reasonable for the officer to enter the rest room. Probable cause was not a prerequisite in doing so.

Defendant contends that none of the exceptions to the warrant requirement apply to validate the seizure of the narcotics. The

three exceptions that were mentioned were plain view, abandonment and exigent circumstances. Because we are satisfied that the plain view exception was satisfied, we need not discuss the other two exceptions.

■ The plain view doctrine is a recognized exception to the general prohibition on warrantless searches. Police are empowered to seize evidence, without a warrant, when that evidence is in plain view. *State v. Perry,* 124 *N.J.* 128, 148, 590 *A.*2d 624 (1991) (citations omitted). For the plain view exception to apply, the police officer must rightfully occupy a position from which the evidence can be viewed. *State v. Bruzzese,* 94 *N.J.* 210, 235–38, 463 *A.*2d 320 (1983) (citations omitted).

■ We have already said that the officer was rightfully present in the rest room. The officer did not have to avert his eyes in the presence of the illegal activity that was taking place in front of him. His seizure of the evidence in defendant's hand was justified.

Defendant's reliance on *State v. Lewis,* 116 *N.J.* 477, 561 *A.*2d 1153 (1989) is misplaced. There, a police officer, acting on a tip, went to defendant's apartment and caused him to open the door. When defendant saw that there was a police officer at the door, he attempted to close it only to be prevented from doing so by the officer's foot. *Id.* at 480, 561 *A.*2d 1153. The officer was then able to see narcotic evidence in the apartment. The plain view exception did not apply because the officer was not lawfully in the viewing area. *Id.* at 483, 561 *A.*2d 1153. Here, a private residence is not involved. Moreover, the officer was rightfully present in the rest room and nothing was done to bar his entry. He had the same right to enter the rest room as any member of the general public.

We affirm both the order denying the motion to suppress and the judgment of conviction.