# IN THE COURT OF APPEALS OF IOWA

No. 17-0372
Filed May 2, 2018

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**PAUL ANDREW MONAHAN,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Pottawattamie County, Gary K. Anderson, District Associate Judge.


　　　Defendant appeals his convictions on five counts of invasion of privacy. **REVERSED.**



　　　Anne M. Rohling, Council Bluffs, David E. Richter, Council Bluffs, and Daniel J. McGinn and Edward F. Noethe of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for appellant.

　　　Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.



　　　Heard by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

Paul Monahan appeals his convictions on five counts of invasion of privacy. We find the State has failed to show the complaining witnesses had a reasonable expectation of privacy. Also, because there is limited evidence to show Monahan knowingly viewed the genitals of the five complaining witnesses and no evidence beyond that to show he was acting for the purpose of arousing or gratifying his sexual desires, we conclude there is not substantial evidence in the record to support Monahan's convictions. Due to our findings on the sufficiency of the evidence, we do not address the other issues Monahan raises on appeal. We reverse the decision of the district court.

## I.     Background Facts & Proceedings

On April 4, 2016, Monahan, who was then eighty-two years old, attended a high school track meet in Treynor. Monahan was the school chaplain for St. Albert Catholic School. He often photographed athletic events for the school and was at the track meet for this purpose. Monahan was charged with five counts of invasion of privacy, in violation of Iowa Code section 709.21 (2016), a serious misdemeanor.[1] The State alleged Monahan viewed the genitals of five members of the same track team while they were using the urinals in the public restroom at the track meet. The court denied Monahan's motion to dismiss on the ground his alleged actions did not meet the definition of the offense of invasion of privacy. Monahan signed a written waiver of his right to a jury trial. The case was tried to the court.

---

[1]  Section 709.21 was subsequently amended to make the offense of invasion of privacy an aggravated misdemeanor. *See* Iowa Code § 709.21(3) (2017).

At the trial, V.K. testified he was a participant in the track meet and was eighteen years old at the time. V.K. stated he used the urinal in the public restroom, and an older man walked up to use the urinal next to him. V.K. stated he looked over and saw the man take a step back and raise his arm as a front between their eyes, and then he believed the man looked down at V.K.'s genitals. V.K. stated, "Put your eyes on the wall, f***er." The man looked startled and left the restroom. V.K. and an adult, Steve Worley, who had been in the restroom, followed the man to his vehicle and got the license plate number, which was later traced to Monahan.

W.W., who was then fifteen years old and participating in the track meet, testified he had been washing his hands in the restroom when he looked in the mirror over the sink and saw Monahan using the urinal next to V.K. He stated, "I saw this old guy with his hand behind his head looking over at [V.K.]" W.W. stated he believed the man was looking at V.K.'s penis. W.W. testified to a later incident, when as he was using a urinal, out of the corner of his eye he saw Monahan went to the urinal next to him and raised his right hand behind his head. He stated he believed Monahan was looking at his penis. W.W. testified he went into the restroom with R.B. and pretended to be washing his hands while R.B. used the urinal and in the mirror he saw Monahan do the same things as before.

R.M. was seventeen years old at the time of the track meet. He testified he was using a urinal in the restroom when a man, identified as Monahan, came out of the stalls and went to the urinal next to him. R.M. stated from the corner of his eye he saw the man take a step back and then look down. He testified, "I couldn't really see his eyes. I know his head looked towards my genital area."

R.B. participated in the track meet and was fifteen years old at the time. He stated he was washing his hands in the restroom when he looked in the mirror and saw Monahan at the urinal next to R.M. and Monahan "glance[d] down towards [R.M.'s] penis area." R.B. stated he used a urinal later and Monahan went to the next urinal. Due to his awareness of other incidents, R.B. looked over and stated he believed Monahan was looking at his penis.

B.P. was on the same track team and was then fifteen years old. He stated he used a urinal in the restroom and Monahan went to the next urinal. B.P. stated from his peripheral vision he saw Monahan lean back and look down at his privates. He testified he later used the urinal again and the same thing happened. B.P. stated he was looking straight ahead, but saw Monahan with his peripheral vision. He also stated when he was washing his hands he saw in the mirror Monahan looked at W.W. Deputy James Doty testified it was possible to see the urinals from the mirrors above the sinks in the restroom. At the close of the State's evidence, Monahan filed a motion for judgment of acquittal, which was denied by the court.

Monahan presented the testimony of his physician, Dr. Jon Thomas, who testified Monahan has an enlarged prostate and this caused him to urinate frequently. Moreover, he was taking a diuretic for high blood pressure, which also causes frequent urination. In addition, Dr. Thomas testified Monahan had diabetes and if his blood sugar was too high, this would also cause frequent urination. Dr. Thomas stated Monahan had problems with balance and stability due to dysfunction in his ears. His diabetes caused tingling and numbness in his feet.

Dr. Thomas described Monahan as being "very unsteady in the gait." Furthermore, Monahan had arthritis and muscle spasms in his neck, which caused severe pain.

Lynn Ford, a former sheriff of Pottawattamie County, gave the opinion the investigation by law enforcement was problematic because the witnesses were not interviewed until several weeks after the incident. Ford also stated officials should have done more to determine the extent to which the witnesses discussed the incident with each other before they were interviewed. Ford went to the public restroom in Treynor, Iowa and made several measurements. There were four urinals in the restroom, with partitions about six feet high between the urinals. The urinals extended about fourteen inches from the wall and the partitions were about sixteen inches long, thus only extending two inches further out from the wall than the urinals.

Kenneth Schreiber, the athletic director at St. Albert's, testified he noticed Monahan made more frequent use of the restroom. He stated he had known Monahan for many years and never had any cause for concern. Dan Gradoville, a former student, testified Monahan had "a little more trouble maneuvering around," and was sometimes out of balance. John Helton, a co-worker, testified Monahan "kind of wobbles these last two years." He stated Monahan sometimes had an accident where he did not get to the restroom in time. Monahan also presented the testimony of several past and present students who testified they never had any concerns about his behavior. Monahan renewed his motion for judgment of acquittal, which was again denied by the court.

The court determined Monahan was guilty of five counts of invasion of privacy. The court found the testimony of the boys was credible. The court

concluded Monahan "looked directly at each boy's penis," and he "did so with the specific intent to arouse or gratify [his] sexual desires." The court also found the boys had a reasonable expectation of privacy while in a partial state of nudity as they were urinating in the public restroom.

Monahan filed a motion for new trial and motion in arrest of judgment, seeking to overturn the court's verdict on several grounds. The court found a claim regarding the waiver of a jury trial was not ripe for adjudication. The court also found Monahan had not timely raised a challenge to the trial information, on a claim of vagueness. On other issues concerning the sufficiency of the evidence, the court overruled the motions. Monahan was sentenced to thirty days in jail on each count, to be served concurrently, and the court suspended the sentence. Monahan was placed on informal probation for one year and ordered to register as a sex offender. Monahan now appeals his convictions.

## II.     Trial Information

Monahan claims the trial information was unconstitutionally vague. He states the information mentions two or three incidents for some of the teenagers, but does not indicate which incidents the State was relying on for the criminal charges. Monahan claims he preserved error on this claim by his motion to dismiss and his combined motion for new trial and motion for judgment of acquittal.

An objection based on a claim of defects in the trial information must be raised prior to trial. Iowa R. Crim. P. 2.11(2)(b). Monahan filed a motion to dismiss prior to trial, claiming even if all of the allegations in the trial information were true they did not constitute the offense of invasion of privacy. He did not challenge the trial information in the motion to dismiss. Furthermore, he did not file a bill of

particulars seeking a more specific statement of the details of the offenses charged. *See* Iowa R. Crim. P. 2.11(5). We conclude Monahan failed to preserve error on his claim the trial information was unconstitutionally vague. *See State v. Davis*, 581 N.W.2d 614, 616 (Iowa 1998).

### III. Sufficiency of the Evidence

On claims concerning the sufficiency of the evidence, our review is for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In reviewing a challenge to the sufficiency of evidence supporting a guilty verdict, we consider all of the evidence in the record "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Keopasaeuth,* 645 N.W.2d 637, 640 (Iowa 2002). A verdict will be upheld if there is substantial evidence in the record to support it. *Sanford*, 814 N.W.2d at 615. We will consider all the evidence presented, not just the evidence supporting the verdict. *State v. Jacobs*, 607 N.W.2d 679, 682 (Iowa 2000). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Sanford*, 814 N.W.2d at 615. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

Section 709.21(1) provides:

> A person who knowingly views, photographs, or films another person, for the purpose of arousing or gratifying the sexual desire of any person, commits invasion of privacy if all of the following apply:

> *a.* The other person does not have knowledge about and does not consent or is unable to consent to being viewed, photographed, or filmed.
> *b.* The other person is in a state of full or partial nudity.
> *c.* The other person has a reasonable expectation of privacy while in a state of full or partial nudity.

The phrase, "Full or partial nudity," is defined as "the showing of any part of the human genitals or pubic area or buttocks, or any part of the nipple of the breast of a female, with less than fully opaque covering." Iowa Code § 709.21(2)(a).

**A.** Monahan claims the State did not adequately show the five teenage boys had a reasonable expectation of privacy while using the urinals in a public restroom. The criminal offense of invasion of privacy occurs only in situations where a person "has a reasonable expectation of privacy while in a state of full or partial nudity." *Id.* § 709.21(1)(c). In order for a person to have a reasonable expectation of privacy, the expectation must be reasonable both on an objective and subjective basis. *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001); *State v. Lomax*, 852 N.W.2d 502, 506 (Iowa Ct. App. 2014). "The determination of whether a person has a legitimate expectation of privacy with respect to a certain area is made on a case-by-case basis, considering the unique facts of each particular situation." *State v. Lowe*, 812 N.W.2d 554, 567 (Iowa 2012) (citation omitted).

Each of the five teenage boys testified he had an expectation of privacy while using the urinal in the public restroom at the track meet, meeting the requirement of a subjective expectation of privacy. To determine whether this subjective expectation is reasonable under the law, we must also consider whether

it is one society would objectively consider reasonable. *See Lowe*, 812 N.W.2d at 567 ("The expectation must also be one that society considers reasonable.").

In general, "there is no absolute right to privacy in a public restroom." *State v. Boynton*, 688 A.2d 145, 148 (N.J. Super. Ct. App. Div. 1997). Courts consider the facts of each case, including the layout of the restroom. *Id.* While an individual using a bathroom stall with a door is usually "accorded a reasonable expectation of privacy," the use of "bathroom stalls which are not equipped with doors do not provide the same expectation of privacy." *Id.* The court concluded there was no reasonable expectation of privacy in an unlocked, single-occupancy restroom. *Id.* at 150; *see also State v. Delacerda*, 26 P.3d 1240, 1242 (Idaho Ct. App. 2001) ("Given this visual openness of the restroom interior, and the lack of any lock to exclude others while the restroom was in use, an occupant could not reasonably expect privacy, even when using the restroom for its traditional purpose.").

In *State v. Berber*, 48 Wash. App. 583, 584-85 (Wash. Ct. App. 1987), the court considered whether there was a reasonable expectation of privacy for a person standing at a urinal separated by a partition extending two or three feet from the wall. In determining whether there was a reasonable expectation of privacy, the court considered:

> (1) society's belief that certain areas are ordinarily understood to afford personal privacy; (2) the character of the area in which the claimed privacy interest is asserted; (3) the way in which the area is used; and (4) the method, means, or manner by which the government agents intrude into the area.

*Berber*, 48 Wash. App. at 588.

The court noted, "[T]he fact a toilet or urinal is not completely shielded from public view does not necessarily destroy the expectation of privacy an occupant

possesses." *Id.* at 589. Under the specific facts of the case, however, the court determined, "The location of this toilet in a public restroom, its lack of any real enclosure, and the openness of the view from the general restroom area contribute to a diminished expectation of privacy by those using the facilities therein."[2] *Id.* at 590. The court concluded on an objective basis, a person standing at a urinal did not have "a legitimate or reasonable expectation of privacy." *Id.* at 592.

Also, in *Commonwealth v. Bloom*, 468 N.E.2d 667, 668 (Mass. App. Ct. 1984), the court found there was no reasonable expectation of privacy in an open urinal area, which was blocked from the main entrance to the public restroom by a partition about six feet high and ten or twelve feet long. The court noted the urinals were in "an open area of a public rest room in a public building," which a male member of the public could enter at any time. *Bloom*, 468 N.E.2d at 668. The court determined, "There is no justified expectation of privacy as to incriminating conduct which occurs in the public area of a rest room rather than inside one of the stalls." *Id.* at 667 (citing 1 LeFave, *Search and Seizure* § 2.4 at 346-47 (1978)).

Additionally, in *People v. Anonymous*, 415 N.Y.S.2d 921, 922-23 (N.Y. Just. Ct. 1979), the court found there was no expectation of privacy "in front of the public urinals in an area usable by all male members of the public." There were no partitions between the urinals and members of the public could enter and use the same urinal facilities. *Anonymous*, 416 N.Y.S.2d at 923. The court stated, "What

---

[2] The Washington Court of Appeals later distinguished *Berber* in *City of Tukwila v. Nalder*, 53 Wash. App. 746, 751 (Wash. Ct. App. 1989), where an officer looked through the crack between the door to a stall and the support post in a public restroom, finding the defendant had an objectively reasonable expectation of privacy within a toilet stall with a closed door.

is sought to be called private must have the appearance and the indicia of privacy."
*Id.*

On the other hand, in *State v. Ulmer*, 719 N.W.2d 213, 216 (Minn. Ct. App. 2006), a court found a person had a reasonable expectation of privacy when using a partitioned urinal in a public restroom. The case did not provide any information about the size of the partitions, other than to note the defendant had looked over the top of the partition to see a person at the adjacent urinal. *Ulmer*, 719 N.W.2d at 214. The court stated, "a doorless toilet stall would not tend to offer privacy during use, while a partitioned urinal stall would." *Id.* at 215 (discussing *State v. Bryant*, 177 N.W.2d 800, 804 (Minn. 1970), which stated there would be no expectation of privacy in the use of a bathroom stall where the door had been removed).

We turn to a discussion of the specific facts of the case. *See Lowe*, 812 N.W.2d at 567. In the public restroom at issue, there were four urinals, with partitions about six feet high between the urinals. The urinals extended about fourteen inches from the wall and the partitions were about sixteen inches long, thus extending two inches further out from the wall than the urinals. The urinals were visible from the common areas of the restroom, including from the mirrors above the sinks.

Considering the configuration of the restroom, we find the urinals were in an open, common area. *See Berber*, 48 Wash. App. at 590 (noting the "location of this toilet in a public restroom, its lack of any real enclosure, and the openness of the view from the general restroom area"). The partitions, which only extended two inches further into the restroom than the edge of the urinals, provided very

limited privacy to a person using a urinal. The space for each urinal was more open than bathroom stalls without a door, which have been found not to provide a reasonable expectation of privacy. *See Bryant*, 177 N.W.2d at 804; *Boynton*, 688 A.2d at 148; *but see Ulmer*, 719 N.W.2d at 215. We find the urinals in this case are like those discussed in *Bloom*, 468 N.E.2d at 668, *Anonymous*, 415 N.Y.S.2d at 923, and *Berber*, 48 Wash. App. at 592, where courts concluded there was no reasonable expectation of privacy.

Furthermore, as the alleged incidents occurred in a public restroom, members of the public could enter at any time. *See Bloom*, 468 N.E.2d at 668; *see also Anonymous*, 415 N.Y.S.2d at 923 (noting the "public urinals [were] in an area usable by all male members of the public"). Considering the character of the area in which the claimed privacy interest is asserted, a public restroom, and the way in which the area is used, by anyone who walked into the restroom, we find there would be a diminished expectation of privacy. *See Berber*, 48 Wash. App. at 588.

We conclude the State has failed to present sufficient evidence to show there was an objectively reasonable expectation of privacy for a person using the urinals in the public restroom at the track meet. *See Lowe*, 812 N.W.2d at 567 (noting a reasonable expectation of privacy must be one society would consider reasonable).

**B.** This case does not involve photographs or films, so the State was required to present substantial evidence to show Monahan knowingly viewed the genitals of another person. The State presented evidence to support its theory Monahan would use the urinal next to the teenage witnesses, take a step back so

he could see around the partition, then look down so he could see their genitals. Each of the five teenagers testified he was in a state of partial nudity as he used the urinal.

The State's theory claimed Monahan would purposely take a step back so he could see around the partition. Monahan presented testimony from his physician to show his balance was unsteady due to problems with his ears and numbness in his feet. Monahan was described by various witnesses as "very unsteady," had "trouble maneuvering around," and "kind of wobbles." There was also evidence he had arthritis and muscle spasms in his neck, which was presented as a reason he put his arm up by his head and turned his head.

In addition, even if Monahan did step backwards, either accidentally or on purpose, there was limited evidence as to what he would have been able to see. The State did not present any evidence to show a person in the position of Monahan would have been able to see the genitals of a person in the next urinal. *See, e.g.*, *State v. House*, No. 06-0568, 2007 WL 4553525, at \*2 (Iowa Ct. App. Dec. 28, 2007) (reversing a conviction for invasion of privacy because "there was no evidence of what, if any, of [the victim's] body was visible to House on the day of the incident"). Deputy Doty testified if a person was standing in front of a urinal as if using it and leaned back about six inches, the person could see the next urinal.[3] His test was conducted without a second person at the next urinal. Therefore, there was no information about whether a person would have been able

---

[3] Deputy Doty was asked, "And if you took a step back, could you clearly see around the divider?" but the court sustained defense counsel's objection to the answer on the ground of foundation, as the deputy stated he had not taken a step back.

to see the genitals of someone using the next urinal or if the person's view would be blocked by the partition or the other person's body or clothing.

We find there is at best very slim evidence to show Monahan viewed the five teenage witnesses while they were in a state of partial nudity. In *State v. Ashmore*, No. 11-1878, 2012 WL 5951394, at *5 (Iowa Ct. App. Nov. 29, 2012), the defendant, who stood on a ladder and looked in the victim's window, claimed there was only speculation he had been able to view the victim in a state of full or partial nudity. We found Ashmore's statement, "I didn't even hardly get to see anything," provided sufficient evidence to show Ashmore had viewed the victim. *Ashmore*, 2012 WL 5951394, at *5. In the present case, there are no statements or additional evidence to show what Monahan was able to view.

**C.**     Section 709.21 also requires the State to prove an accused viewed another person "for the purpose of arousing or gratifying the sexual desire of any person." "Intent is a matter that is seldom capable of direct proof. Consequently, we have recognized that a trier of fact may infer intent from the normal consequences of one's actions." *State v. Evans*, 672 N.W.2d 328, 330 (Iowa 2003). "The requisite intent to arouse or gratify the sexual desire of any person can be inferred from an accused's conduct, remarks, and all surrounding circumstances." *State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008).

There are three previous Iowa invasion of privacy cases where the issue was raised of whether a defendant was acting for the purpose of sexual arousal or gratification. First, in *State v. McAfee*, No. 13-0268, 2014 WL 1494901, at *2 (Iowa Ct. App. Apr. 16, 2014), the defendant took a video of the incapacitated victim, who was naked from the waist down, and the defendant, who was also naked,

groped and spread her buttocks. In addition, "The photographs admitted into evidence also show a naked McAfee with his finger in the victim's vagina." *McAfee*, 2014 WL 1494901, at *2. We concluded there was sufficient evidence the video was created for the purposes of sexual arousal or gratification and affirmed the defendant's conviction for invasion of privacy. *Id.*

Second, in *State v. Johnson*, No. 15-0623, 2016 WL 3002866, at *2 (Iowa Ct. App. May 25, 2016), the defendant took a video of the victim, who was naked, while she was vomiting and took photographs of someone spreading her buttocks. We concluded there was sufficient evidence defendant acted for the purposes to arouse or gratify his sexual desires, especially because he engaged in sexual conduct with the victim during the same time period, and the conviction for invasion of privacy was affirmed. *Johnson*, 2016 WL 3002866, at *2.

Third, in *State v. Qualls*, No. 15-1292, 2016 WL 4803776, at *3 (Iowa Ct. App. Sept. 14, 2016), we affirmed a defendant's conviction for invasion of privacy after he took a video of the victim while she was taking a shower. We found there was sufficient evidence the defendant acted for the purpose of sexual arousal and gratification based on the length of the video and because the defendant had maneuvered the camera during the recording to maximize the view of the victim. *Qualls*, 2016 WL 4803776, at *3.

Unlike the cases of *McAfee* and *Johnson*, there is no evidence Monahan touched the victims in any way, which could have led to a conclusion the defendant was acting for the purpose of sexual arousal and gratification. Also, there is no evidence he viewed them over a length of time. Monahan did not make any remarks to the teenage witnesses. The surrounding circumstances, the use of

urinals in a public restroom at a track meet where people were walking in and out, does not give rise to an inference of sexual arousal and gratification. Nor is there any other evidence to show he was interested in viewing the genitals of teenage boys. *See, c.f., Ashmore*, 2012 WL 5951394, at *2 (noting defendant stated he stopping walking by a house where he had peeped in the window because "it was just too tempting"). Furthermore, there is no evidence Monahan became sexually aroused.

The court found Monahan had looked at the genitals of the five boys and determined "[t]he only reasonable conclusion" was he "did so with the specific intent to arouse or gratify [his] sexual desires." Thus, the court's conclusion was based on Monahan's conduct. We have determined, however, there was at best very slim evidence to show Monahan viewed the genitals of the five teenage witnesses.

Because there is limited evidence to show Monahan knowingly viewed the genitals of the five complaining witnesses and no evidence beyond that to show he was acting for the purpose of arousing or gratifying his sexual desires, we conclude there is not substantial evidence in the record to support Monahan's convictions.

Due to our findings on the sufficiency of the evidence, we do not address the other issues Monahan raises on appeal. We reverse the decision of the district court.

**REVERSED.**

Danilson, C.J., concurs; Vaitheswaran, J., concurs specially.

**VAITHESWARAN, Judge** (concurring specially).

I specially concur. I agree the State failed to prove Monahan viewed the teenagers "for the purpose of arousing or gratifying the sexual desire of any person." Accordingly, I agree with the decision to reverse the finding of guilt. I write separately because I believe substantial evidence supports the district court's finding that the boys had "a reasonable expectation of privacy." As the court stated:

> A male using a urinal in a public restroom that has some limited dividers, as the Treynor track men's bathroom does have, has a reasonable expectation that he will not be intentionally spied upon and have another person try to look around the dividers to observe him.

The court cited *State v. Ulmer*, 719 N.W.2d 213 (Minn. Ct. App. 2006), in support of its finding. There, the defendant was charged with interference with privacy based on a complaint he "was watching an unattended seven-year-old boy in the vicinity of the men's public restroom." *Ulmer*, 719 N.W.2d at 214. The court found a reasonable expectation of privacy in the public restroom, reasoning as follows:

> The design of the restroom . . . affords a user more than a modicum of privacy by virtue of the partitions that separate the urinals. When a person steps up to a urinal, the partitions and the user's body create a space in which the user would quite obviously expect to be free from even incidental observation, let alone from the exploring eyes of predatory restroom stalkers. In that space shielded from the public's view by partitions and the user's body, we conclude that a reasonable person has an expectation of privacy. Put differently, only an unreasonable person would consider that space open to public viewing.

*Id.* at 215. I am persuaded by this authority because it speaks directly to the reasonable expectation of privacy element of an invasion of privacy claim. Certain

other opinions addressing expectations of privacy in public restrooms arise in the Fourth Amendment context. *See, e.g.*, *State v. Boynton*, 688 A.2d 145, 146 (N.J. Super. Ct. App. Div. 1997) ("This appeal raises an issue of first impression concerning the constitutional validity of a search and seizure in a single-occupancy, public rest room."); *State v. Berber*, 740 P.2d. 863, 866 (Wash. Ct. App. 1987) ("The fundamental issue is whether the officer's glance over Mr. Berber's shoulder while he stood over an open toilet in this public restroom constituted an unreasonable intrusion or search subject to the protections of Washington Constitution article 1, section 7."); *Commonwealth v. Bloom*, 468 N.E.2d 667, 668 (Mass. App. Ct. 1984) (addressing the suppression of evidence obtained by police in a public restroom); *People v. Anonymous*, 415 N.Y.S.2d 921, 922 (N.Y. Just. Ct. 1979) (addressing whether "the defendants' Fourth Amendment rights under the United States Constitution were violated by members of the New York State Police when said officers made certain observations of the defendants in a public restroom"). As one court stated, "[A] phrase defined over the years in the cauldron of Fourth Amendment search and seizure law" may have limited application to the same words in a penal statute. *People v. Schreier*, 909 N.Y.S.2d 885, 890 (N.Y. Co. Ct. 2010). In sum, I would reverse, but not based on the absence of a reasonable expectation of privacy.