# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3751-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPH ESNES,
a/k/a CHRISTOPHER ESNES,

    Defendant-Appellant.

_____

Submitted March 10, 2020 – Decided May 12, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 18-02-0137.

Caruso Smith Picini, PC, attorney for appellant (Timothy R. Smith, of counsel and on the briefs; Zinovia H. Stone, admitted pursuant to Rule 1:21-3(b), on the briefs).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Christoph Esnes appeals from an October 29, 2019 order that denied his motion to suppress evidence without conducting a Franks[1] hearing and granted the State's motion to introduce defendant's statements. He also appeals from a January 31, 2020 order denying his motion for reconsideration and his April 24, 2020 conviction and sentence. We affirm.

I.

We derive the following facts from the record. Defendant, a disgruntled physical education teacher at Littleton Elementary School in Parsippany, wanted to find out who was leaving blood underneath the seat of the unisex faculty restroom's toilet for years. Defendant reported the issue to the school nurse and teachers but not to the principal or a custodian. Apparently, the school took no steps to remedy the situation.

To find the culprit, in November 2016, defendant affixed a video camera underneath the sink with a strap and tape and directed it at the feet and lower body of any entrants. When defendant would find a mess under the toilet seat, he would retrieve the camera, download the video on his personal computer at school, view the footage, and then return the camera to under the sink after deleting the footage. Defendant stated he removed the camera and replaced it

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

A-3751-19

approximately twelve times. Defendant claimed he wanted to catch the person making the mess but received no sexual gratification from viewing the videos and that he only did it for cleanliness purposes.

Although the videos only showed the restroom users from the neck down, defendant indicated he could identify the people by their shoes and clothing. Defendant was unable to determine who made the mess except for one person who urinated all over the toilet seat. Defendant was aware that the camera recorded people in compromising positions but claimed he did not know what else to do to catch the culprit. The unisex faculty restroom was not kept locked or labeled as a faculty restroom. It is accessed by an unrestricted hallway.

On April 20, 2017, a fellow teacher found and removed the camera and reported it to the principal, who reported it to the police. Detective Marcin Czajka and Detective Lieutenant Brian Dowd of the Parsippany-Troy Hills Police Department responded to the school. The principal handed an envelope containing the camera to Czajka.

Czajka returned to the police station and viewed "two short clips" recorded on the camera. The first video clip showed the door of the restroom. Czajka explained that the camera was aimed "towards the door and the toilet." Czajka did not see any people on the first clip. The second clip depicted a

3

slender man, who wore cargo shorts with a tattoo on his ankle and a right thumb ring, rush into the bathroom and grab the camera. Although there were numerous video clips recorded on the camera, Czajka did not view any further clips at that point. Instead, the detectives returned to the school and spoke with the principal, who advised that the only person fitting that description was defendant.

The detectives went to the gymnasium. Defendant fit the description of the man depicted in the second clip. Defendant was wearing cargo shorts, and he had an ankle tattoo and a thumb ring. After the school day ended, the detectives approached defendant and asked him to accompany them to headquarters for an interview. He agreed to do so.

At headquarters, defendant was placed in an interview room and read his Miranda[2] rights. Defendant acknowledged his Miranda rights, waved those rights, initialed and signed the Miranda form, and gave a statement in which he admitted affixing the camera under the restroom sink and recording individuals using the restroom without their consent. He relayed his frustration over the blood left on the toilet seat and that he only used the recording device to find the culprit, not for any sexual gratification. Defendant stated that he placed the

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3751-19

camera under the sink in November or December. Defendant explained that he took the recordings and transferred them to his personally owned laptop computer, which he kept at school, to view them. He did not recall how many videos he recorded but explained that he erased them if he found nothing. Defendant further stated that he did not watch every recording; he only watched the recordings he knew were around the time the toilet was left a mess.

The detectives asked defendant for permission to search the computer and he gave his consent. Defendant also stated he owned another computer at home, an iPad, a tablet, and a cell phone and consented to a search of these "other electronics." Defendant also consented to a search of his cargo shorts and wedding ring. Finally, defendant consented to a search of the camera used to film colleagues in the restroom.

Czajka then collected defendant's computer, iPad, cell phone, and the camera. Czajka waited to perform a further search of the recordings on the camera or any search of the contents of the other electronic devices until he obtained a search warrant and communications data warrant (CDW) for the camera and a search warrant for the other devices.

In February 2018, a Morris County grand jury returned an indictment charging defendant with nineteen counts of third-degree invasion of privacy,

recording exposed intimate parts of a person without their consent, N.J.S.A. 2C:14-9(b)(1).

Defendant moved to dismiss the indictment. He also moved to suppress the warrantless and warrant-based seizures of evidence. The State moved to introduce defendant's statements. Shortly thereafter, defendant moved to dismiss counts eleven to nineteen because the victims in those counts were not identified.

On February 13, 2019, the trial court conducted a motion hearing. The judge recounted the facts, noting that initially the police "had no idea who the camera belonged to." They viewed some of the video clips in order to identify the owner of the camera; defendant was identified by the clothing he wore, an ankle tattoo, and a thumb ring. With the assistance of the principal and potential victims, the detectives were able to identify ten staff members, using still shots derived from the videos. The victims confirmed they had not consented to being filmed. Nine other victims remained unidentified.

Defendant argued counts eleven to nineteen had to be dismissed because the victims were unidentified. Ultimately, the State agreed to dismiss the counts related to unknown victims.

Defendant also moved to hold a Franks hearing, contending that there was a discrepancy between Czajka's statements in the search warrant affidavits and his testimony during the suppression hearing regarding the initial viewing of the recordings.

During cross-examination at the suppression hearing, Czajka acknowledged that he was testifying from memory about events that happened two years earlier. When questioned about his statement in his search warrant affidavit that he had only viewed one video clip, Czajka acknowledged that he testified mistakenly on direct regarding the number of clips he reviewed. He reiterated that he was testifying from memory. He stated he stood by the information set forth in his affidavit rather than his testimony on direct. Czajka testified that the recordings captured several people using the restroom and some of those individuals were exposed.

On October 29, 2019, the judge issued an order and accompanying twenty-nine-page statement of reasons denying defendant's motions to suppress and for a Franks hearing and granted the State's motion to admit defendant's statement.

With respect to Czajka's initial viewing of video clips on the camera, the judge considered whether defendant still had a reasonable expectation of privacy in the camera. He expressly rejected defendant's contention that "a camera

placed in a bathroom accessible to students and the public is a container warranting protection under the New Jersey Constitution." The judge found the "purpose of a camera is not to conceal its contents from plain view," and, thus, not subject to Fourth Amendment protection. Further, the judge found defendant no longer had a reasonable expectation of privacy when he relinquished possession of the camera by placing it in a restroom located in a hallway used by students and faculty.

The judge also found the police would have inevitably discovered the recordings under State v. Sugar, 108 N.J. 151, 156 (1987). Specifically, he found police would have validly obtained a search warrant supported by probable cause based on the principal's statements.

As to defendant's request for a Franks hearing, the judge considered the discrepancy between Czajka's statement at the suppression hearing and his warrant application. The judge explained that Czajka clarified he only viewed one video and that any discrepancy was because "he was testifying from recollection regarding an investigation that occurred [over] two years earlier." He found Czajka's explanation credible. The judge found that any misstatements by Czajka "were not material, deliberate, or reckless" and did not "impact the sufficiency of information used to establish probable cause" because "a search

8

warrant would have been issued absent Detective Czajka's initial search of the camera."

Finally, the judge granted the State's motion to introduce defendant's statements, finding "[t]here was no evidence of physical coercion, punishment, repeated questioning, or long durations of detention." He noted that defendant was a well-educated teacher. The judge found "[d]efendant was apprised of his [Miranda] rights" and "knowingly, intelligently, and voluntarily waived" them.

Defendant then moved for reconsideration. On January 31, 2020, the judge issued an order and accompanying thirteen-page statement of reasons denying reconsideration. The statement of reasons largely reiterated its prior reasoning and analysis, distinguished the cases defendant relied upon, and provided some additional explanation.

Following the denial of his motions, defendant entered into a plea agreement[3] and pled guilty to twelve counts of third-degree invasion of privacy in exchange for a recommended sentence of concurrent terms of probation conditioned upon ninety days in jail to be served through the Sheriff's Labor

---

[3] The plea forms are not part of the record on appeal.

Assistance Program (SLAP),[4] forfeiture of his teaching licenses, and dismissal of the remaining seven counts. Defendant signed an affidavit relinquishing his teaching certificates to be submitted at sentencing.

On April 24, 2020, defendant, who was then forty-three years old, appeared for sentencing. The judge found aggravating factors three (risk of reoffending), N.J.S.A. 2C:44-1(a)(3), and nine ("need for deterring defendant and others from violating the law"), N.J.S.A. 2C:44-1(a)(9). He also found the following mitigating factors: seven ("defendant . . . has led a law abiding life for a substantial period of time before the commission of the present offense"), N.J.S.A. 2C:44-1(b)(7); nine ("defendant is unlikely to commit another offense"), N.J.S.A. 2C:44-1(b)(9); ten ("defendant is particularly likely to respond affirmatively to probationary treatment"), N.J.S.A. 2C:44-1(b)(10); and twelve (cooperation with law enforcement), N.J.S.A. 2C:44-1(b)(12). The judge did not place significant weight on mitigating factors nine and twelve and found the aggravating factors slightly outweighed the mitigating factors.

---

[4] Pursuant to N.J.S.A. 2B:19-5(a), "[t]he governing body of each county, through the sheriff or such other authorized officer, may establish a labor assistance program as an alternative to direct incarceration . . . ." SLAP is a "work program" that "rigorously supervises offenders providing physical labor as an alternative to incarceration." N.J.S.A. 2B:19-5(c)(1).

The judge rejected mitigating factors: one ("defendant's conduct neither caused nor threatened serious harm"), N.J.S.A. 2C:44-1(b)(1); two ("defendant did not contemplate that [hi]s conduct would cause or threaten serious harm"), N.J.S.A. 2C:44-1(b)(1); and eight ("defendant's conduct was the result of circumstances unlikely" to reoccur), N.J.S.A. 2C:44-1(b)(8).

Recognizing it was a negotiated plea, the judge sentenced defendant in accordance with the plea agreement to twelve concurrent two-year terms of probation conditioned upon ninety days in jail to be served on SLAP, forfeiture of his teaching license, and cognitive behavioral treatment. Counts thirteen through nineteen were dismissed.

This appeal followed. The judge denied defendant's motions to stay his sentence, as did this court.

Defendant raises the following points for our consideration:

> I. [DEFENDANT'S] STATEMENTS TO THE POLICE AS WELL AS ANY DATA OBTAINED FROM [DEFENDANT'S] ELECTRONIC DEVICES SHOULD BE SUPPRESSED BECAUSE THEY WERE OBTAINED VIA AN ILLEGAL, WARRANTLESS SEARCH AND IT WAS ONLY VIA THIS ILLEGAL SEARCH THAT [DEFENDANT] BECAME A SUSPECT OF THE CRIME.
>
> II. CONTRARY TO THE TRIAL COURT'S RULING, A DIGITAL CAMERA IS A CONTAINER WORTHY OF FOURTH AMENDMENT PROTECTION, AND

11

THE STATE FAILED TO MEET ITS BURDEN THAT THE CAMERA'S WARRANTLESS SEIZURE SATISFIED THE INEVITABLE DISCOVERY DOCTRINE BECAUSE THE STATE OFFERED NO FACTS TO SUPPORT ITS HEAVY BURDEN THAT POLICE COULD HAVE USED INDEPENDENT SOURCES TO IDENTIFY THE DEFENDANT.

III. THE POLICE OFFICER'S MISLEADING STATEMENTS IN SUPPORT OF SEARCH WARRANTS TO SEARCH [DEFENDANT'S] CAMERA AND OTHER ELECTRONIC DEVICES RESULTED IN INVALID WARRANTS AND, THEREFORE, [DEFENDANT] WAS ENTITLED TO A FRANKS HEARING.

IV. THE COURT ERRED BY IMPROPERLY USING GENERAL DETERRENCE ALONE TO IMPOSE AN OVERLY HARSH SENTENCE.

A. Had the Trial Court Properly Considered All of the Relevant Mitigating Factors, They Would Have Greatly Outweighed the Aggravating Factors.

B. It Is Improper for a Court to Ignore the Relevant Facts and Assume That Committing an Offense Automatically Bars Application of Relevant Mitigating Factors.

C. [Defendant's] Expressions of Remorse and Understanding Towards the Victims in This Matter and His Ability to Benefit From Cognitive Behavioral Treatment Are an Improper Basis For Finding That He Is Likely to Commit Another Offense and That No Weight Should Be Placed On That Remorse.

12

D. The Trial Court Erred When It Gave Almost No Weight to [Defendant's] Cooperation with the Police Despite the Fact That He Gave a Statement and Access to All of His Electronic Devices Willingly.

## II.

"Our role on appeal is limited." State v. Chippero, 201 N.J. 14, 32 (2009). When reviewing a motion to suppress evidence, we "accept the factual findings made by the trial court . . . provided those factual findings are 'supported by sufficient credible evidence in the record.'" State v. Smith, 212 N.J. 365, 387 (2012) (quoting State v. Handy, 206 N.J. 39, 44 (2011)). "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Therefore, "[a]n appellate court should disregard those findings only when [they] are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing Johnson, 42 N.J. at 162). Accordingly, we "pay substantial deference to the issuing court's finding of probable cause." Chippero, 201 N.J. at 33 (quoting State v. Perry, 59 N.J. 383, 393 (1971)). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled

to special deference . . . [and] are reviewed de novo." Hubbard, 222 N.J. at 263 (citing State v. Ghandi, 201 N.J. 161, 176 (2010)).

## A.

Defendant contends he: (1) had a reasonable expectation of privacy in the camera's recorded images; (2) did not "abandon" the camera because he intended to retrieve it; (3) the recordings are afforded increased privacy because the camera is a "container" shielding the public from viewing its contents. Defendant contends his statements to the police and the data obtained from his camera and electronic devices must be suppressed as fruits of an illegal warrantless search.

The State argues: (1) defendant had no reasonable expectation of privacy because he placed the camera in public; (2) defendant abandoned the camera; (3) the camera is not a container worthy of greater protection; and (4) defendant's identity and the evidence recorded on the camera would inevitably have been discovered by lawful means.

"The New Jersey Constitution 'requires the approval of an impartial judicial officer based on probable cause before most searches may be undertaken.'" State v. Hempele, 120 N.J. 182, 217 (1990) (quoting State v. Patino, 83 N.J. 1, 7 (1980)). As such, warrantless searches are presumptively

invalid. State v. Pineiro, 181 N.J. 13, 19 (2004) (citing Patino, 83 N.J. at 7). "The State [carries] the burden to demonstrate that '[the search] falls within one of the few well-delineated exceptions to the warrant requirement.'" Id. at 19 (alteration in original) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).

In contrast, a search executed pursuant to a warrant enjoys the presumption of validity. State v. Marshall, 199 N.J. 602, 612 (2009) (citing State v. Jones, 179 N.J. 377, 388 (2004)). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389). The defendant bears the burden of challenging the search and must "prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Probable cause exists where there is "a reasonable ground for belief of guilt" based on facts of which the officers had knowledge and reasonably trustworthy sources. Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)).

When reviewing the issuance of a search warrant, "a reviewing court, especially a trial court, should pay substantial deference to [the issuing judge's] determination." State v. Kasabucki, 52 N.J. 110, 117 (1968). "[W]hen the

adequacy of the facts offered to show probable cause . . . appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." Id. at 116 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965); State v. Mark, 46 N.J. 262, 273 (1966)).

      1.      Whether Defendant Abandoned His Camera Even if He Intended to Retrieve It.

A defendant lacks standing to challenge a potentially unlawful search of property if he abandoned that property. State v. Johnson, 193 N.J. 528, 548-49 (2008). Stated another way, "abandonment of property strips a person of standing to challenge a search." Id. at 547. This serves as an exception to the automatic standing rule, which applies "to defendants charged with possessory offenses, regardless of whether they had an expectation of privacy in the area searched." Id. at 545. The State bears the burden of proving abandonment. State v. Shaw, 237 N.J. 588, 617 (2019) (quoting State v. Randolph, 228 N.J. 566, 582 (2017)).

Personal "property is abandoned if: (1) a person has either actual or constructive control or dominion over property; (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and (3) there are no other apparent or known owners of the property." State v. Carvajal, 202 N.J. 214, 225 (2010) (citing Johnson, 193 N.J. at 549). We have

16

previously noted that whether the defendant intended to retrieve or return to the property is "irrelevant." State v. Burgos, 185 N.J. Super 424, 428 (App. Div. 1982) (quoting Smith v. United States, 292 A.2d 150, 151 (D.C. App. 1972)). However, if there is an "indication that someone owns or controls property left in a public place or on a public carrier," the property is not abandoned. Carvajal, 202 N.J. at 226.

Relying on State v. Bailey, 97 N.J. Super. 396, 400-01 (App. Div. 1967), defendant argues he did not abandon the camera because he intended to retrieve it to review the footage. The State argues defendant's intent to retrieve the camera is irrelevant, relying on Burgos, 185 N.J. Super. at 427-28.

The trial court found defendant "abandoned any constitutionally protected privacy interest in the camera when he placed it in a restroom where users thereof could, and ultimately did, discover and turn it over to authorities." Citing Burgos, the trial court noted that defendant's intent to retrieve the camera is irrelevant and found defendant relinquished control of the camera.

We need not decipher whether defendant's intent to retrieve the camera is relevant because the record demonstrates that defendant did not discard or abandon the camera. He affixed it in what he thought was an inconspicuous

17

location and was still using the camera and periodically retrieving the recorded images it captured.

The facts in Carvajal are distinguishable because, there, the police entered a bus and found a large duffel bag that remained unclaimed. 202 N.J. at 219-20. Luggage is often left behind on buses, but cameras are not often "left behind" and taped under sinks of school restrooms. Because there was an indication the camera was owned or controlled by someone, defendant retains standing to dispute the legality of the warrantless search.

2.    Whether Defendant Had a Reasonable Expectation of Privacy in the Camera

Although the State did not establish that defendant lacked standing through abandonment, the search and seizure is still valid if defendant had no reasonable expectation of privacy in the recorded images stored in the camera. See Randolph, 228 N.J. at 582. See also State v. Hinton, 216 N.J. 211, 234 (2013) (recognizing that even when a defendant has standing to move to exclude evidence, "[t]hat inquiry is separate and distinct from the question" of "whether defendant possesses a reasonable expectation of privacy" in the evidence). Defendant argues that he had a reasonable expectation of privacy in the video recordings because the camera was a "container" that shields its contents from plain view. The State argues defendant lacked any reasonable expectation of

privacy in the camera, which was left unattended in an unlocked public restroom, aimed at a toilet, and later discovered by a teacher. It further argues the camera is not a container warranting extra protection.

To invoke constitutional protections against search and seizure, a defendant must show a "reasonable or legitimate expectation of privacy was trammeled by government authorities." State v. Evers, 175 N.J. 355, 368-69 (2003) (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection . . . [b]ut what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Katz v. United States, 389 U.S. 347, 351 (1967).

"[E]xpectations of privacy are established by general social norms." Hempele, 120 N.J. at 200 (quoting Robbins v. California, 453 U.S. 420, 428 (1981)). "A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.'" Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978). That analogy is apropos here. Defendant placed a camera in an elementary school's unisex restroom for the purpose of recording persons that used the restroom. Even if defendant believed the recordings would remain

19

private, this clearly improper usage of the camera is not one which society or the law recognizes as giving rise to a reasonable expectation of privacy.

State v. Boynton, 297 N.J. Super. 382 (App. Div. 1997), is on point. The defendant in Boynton engaged in a drug transaction in an unlocked, single-stall, public restroom in a bar. Id. at 384. Police walked in and viewed defendant holding a bag of cocaine and facing another individual. Id. at 385. The trial court denied defendant's motion to suppress, concluding defendant "could not have had a reasonable expectation of privacy" in "the common area of an unlocked" bathroom. Id. at 386. We affirmed, holding a person loses their reasonable expectation of privacy when they conduct illegal activity in a single-use bathroom with the door unlocked, giving rise to the "possibility that an individual could enter the rest room" and view the illegal activity. Id. at 392.

Here, defendant not only knew that someone could enter the bathroom during the course of the illegal activity—he anticipated it; indeed, there was a near certainty that a faculty member or even a student, would enter the bathroom and be recorded by defendant's camera. Defendant planted the camera in a public place, where any person using the restroom might spot it, confiscate it, and check its contents. Defendant did nothing to protect the stored data from access by a member of the public. Apparently, the stored videos could be

accessed by anyone, without having a PIN code or specialized investigative software. While defendant did not abandon the camera, he assumed the risk that anyone entering the restroom might find the poorly concealed camera and view the stored images. As such, defendant relinquished any reasonable expectation of privacy in the camera.

Defendant, likewise, lacks a reasonable expectation of privacy in the camera's recordings. We recognize that the New Jersey Constitution protects "the owner of every container that conceals its contents from plain view." Hempele, 120 N.J. at 202 (quoting United States v. Ross, 456 U.S. 798, 822-23 (1982)). Examples of such containers are handbags, sealed packages, double locked footlockers, small suitcases, and tote bags. Id. at 202-03. "The critical issue is whether the container conceals its contents from plain view." Id. at 203 (citing Ross, 456 U.S. at 822-23; Robbins, 453 U.S. at 427).

A video camera is fundamentally different than the containers discussed in Hempele. The camera's purpose was to record restroom users—not to shield its contents from view. See Patino, 83 N.J. at 18 (Pashman, J., concurring) (finding a shopping bag akin to a suitcase and footlocker because its "'very purpose' was to serve as a repository for personal items when one wishes to transport them'" (quoting Arkansas v. Sanders, 442 U.S. 753, 764 (1973))). The

21

fact that its digital recordings cannot be viewed without accessing its recorded memory is not controlling. Our analysis would be different if the camera had been hidden from view inside a container.

Moreover, even if the camera were to be considered a container, it meets the recognized exception that police may search property without a warrant when police can infer the property's contents from its appearance and location. See State v. Guerra, 93 N.J. 146, 150-51 (1983) (finding search of packages valid where "the size of the packages and the odor of marijuana that they emitted clearly suggested that they contained contraband") (citing Sanders, 442 U.S. at 764 n.13). "Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." Sanders, 442 U.S. at 764-65 n.13; accord Patino 83 N.J. at 18 (Pashman, J., concurring) (recognizing property may be searched when its appearance infers its contents).

The camera's location and how it was aimed fully supported an inference that it was being used to film persons using the toilet. See United States v. Davis, 690 F.3d 226, 236 (4th Cir. 2012) (considering hospital practices concerning patients' property, and the fact that defendant was shot, to infer the bag underneath the defendant's hospital bed contained the clothing he wore when

22

he was shot).  Here, the detectives could reasonably infer that a camera found taped underneath a sink pointing towards a toilet in a public restroom would contain compromising and inappropriate videos or photographs.  Accordingly, defendant did not have a reasonable expectation of privacy in the recordings.

### 3. Whether the Recordings Would Have Inevitably Been Discovered

For the sake of completeness, we also address whether the video recordings were admissible under the inevitable discovery doctrine.  Defendant argues that the warrant was invalid because it was issued based on an affidavit that relied upon unlawfully obtained evidence gleaned from viewing two video clips stored on the camera.  We disagree.

When an affidavit submitted in support of an application for a search warrant contains lawfully obtained information which establishes the probable cause required for a search, evidence obtained pursuant to the warrant will not be suppressed on the ground that the affidavit also contains unlawfully obtained information.  United States v. Karo, 468 U.S. 705, 719-21 (1984); State v. Holland, 176 N.J. 344, 359-61 (2003); State v. Chaney, 318 N.J. Super. 217, 221-25 (App. Div. 1999).  To sustain the validity of a warrant based on an application containing unlawfully obtained information, the State must demonstrate, by clear and convincing evidence, that the police would have

sought the warrant even if they had not previously acquired the unlawfully obtained information and that the acquisition of that information did not involve flagrant police misconduct. Holland, 176 N.J. at 360-61.

Here, the affidavit in support of the application for the search warrant contained substantial evidence, apart from the information gleaned from the video clips. This evidence included that the camera was found in the faculty restroom "concealed under the sink and was oriented to record any activity specifically in the area of the toilet." A teacher removed the camera and turned it over to the school's main office. Given the reported location and orientation of the camera, the police had a reasonable belief that the use of the camera invaded the privacy of those using the restroom and took custody of the camera. This information alone provided a sufficient basis for the issuance of a search warrant. Czajka would have sought the warrant even if he did not view the video clips. Viewing the video clips was not flagrant police misconduct. Accordingly, the search and CDW warrants were valid.

In addition, evidence obtained unlawfully without a search warrant may still be admissible if it would inevitably have been discovered. State v. Sugar, 100 N.J. 214, 236-37 (1985). To admit such evidence, the State must show by clear and convincing evidence that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Id. at 238.]

The inevitable discovery doctrine may apply where evidence that was seized unlawfully inevitably would have been seized under the authority of a subsequently issued search warrant. State v. Damplias, 282 N.J. Super. 471, 480-81 (App. Div. 1995).

We are satisfied that under the tests set forth in Sugar, 100 N.J. at 238, defendant's identity and the recordings made by defendant inevitably would have been discovered in the course of execution of the warrant for the search of the camera and other electronic devices even if Czajka had not previously viewed the video clips in a warrantless search. We believe that "proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of [this] case" even if videos clips had not been viewed, that is, that the police would have applied for, obtained and executed a warrant to search the car. Sugar, 100 N.J. at 238. Since the recordings would

25

still have been stored on the camera or defendant's computer at the time of such a search, "the pursuit of [these] procedures would have inevitably resulted in the discovery of the [videos] . . . ." Ibid. And because the search warrant would have been obtained even if the police had not previously viewed the video clips, "the discovery of [defendant's identity] through the use of such procedures would have occurred wholly independently of the discovery of such evidence by [alleged] unlawful means." Ibid. For this additional reason, we uphold the denial of defendant's suppression motion based on the inevitable discovery doctrine.

We further note that before viewing the recordings, Czajka could certainly have applied for a search warrant based on the information obtained from the principal that a camera was found affixed underneath the sink, aimed at the toilet, in a unisex public restroom. Had that occurred, a search warrant for the camera would have been granted based on the substantial invasion of privacy the camera posed. The identity of the owner or operator of the camera was not needed, much less essential, to establish probable cause for the warrant to search the camera. Once he obtained the warrant and viewed the recordings, Czajka would have pursued identification of the person operating the camera, as

depicted on the recordings. Given defendant's cargo shorts, thumb ring, and exposed ankle tattoo, this would inevitably have led to his identification.

III.

Defendant argues that the trial court erred by denying his application for a Franks hearing. We disagree.

To be entitled to a Franks hearing, a defendant must show that police made "a false statement knowingly and intentionally, or with reckless disregard for the truth," which was "necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 155-56. See also State v. Howery, 80 N.J. 563, 567-68 (1979). "[T]he defendant must make a 'substantial preliminary showing' of falsity in the warrant." Howery, 80 N.J. at 567 (quoting Franks, 438 U.S. at 170). The defendant must also show the misstatements were "material to the extent that when they are excised from the affidavit, [it] no longer contains facts sufficient to establish probable cause." Id. at 568 (citing Franks, 438 U.S. at 171). If the defendant proves such a falsity, "the warrant is invalid and the evidence seized thereby must be suppressed." Id. at 566.

Similarly, "[t]hese requirements apply where the allegations are that the affidavit, though facially accurate, omits material facts." State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992) (citing State v. Sheehan, 217 N.J. Super.

20, 25 (App. Div. 1987)).  An omission is deemed material if the issuing judge likely would not have approved the warrant if the judge had been apprised of the omitted information.  Sheehan, 217 N.J. Super. at 25.

If probable cause exists despite the errant information, the search warrant remains valid, and an evidentiary hearing is unnecessary.  Ibid.  If the defendant meets the requisite threshold burden, however, the court must conduct a hearing.  Id. at 25-26.  In turn, if "the defendant proves by a preponderance of the evidence that the affiant, deliberately or with reckless disregard for the truth, excluded material information from the affidavit which, had it been provided, would have caused the judge to refuse to issue the warrant, the evidence must be suppressed."  Id. at 26.

We review a trial judge's decision regarding the need for a Franks hearing for abuse of discretion.  State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009).  An abuse of discretion exists when a judge's "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."  United States v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

The judge found "the misstatements by Detective Czajka were not material, deliberate, or reckless." First, he found Czajka's explanation that "he was testifying from recollection regarding an investigation that occurred two years earlier" credible. Moreover, he found the discrepancy immaterial, as "a search warrant would have been issued absent Detective Czajka's initial search of the camera."

Defendant argues he was entitled to a <u>Franks</u> hearing because Czajka's testimony during the suppression hearing contradicted his warrant application. He asserts Czajka testified that he viewed a second video on defendant's camera after no one appeared in the first video but averred in his affidavit that he "opened a file that contained a short video clip . . . [and] [a]t the end of the clip, [he] observed a male quickly enter the bathroom and turn the device off as he was removing it."

Defendant argues the discrepancy is material because if Czajka only viewed the first video and defendant was not on film, there is no evidence of invasion of privacy. Additionally, defendant takes issue with a statement in the warrant application that the investigation and defendant's statements revealed that images were transferred to other devices. He argues the evidence shows

29

that the information that defendant transferred images to other devices only came from defendant's statement, not other investigation.

The State argues defendant cannot show that Czajka's misstatement was intentional or made with a reckless disregard for the truth. It further argues any misstatement was immaterial and that the warrant-issuing judge would have still found ample probable cause to issue a warrant.

We discern no abuse of discretion. Defendant did not demonstrate that Czajka knowingly and intentionally made a false statement in his affidavit, or that he did so with reckless disregard for the truth. See Franks, 438 U.S. at 155-56. Nor did he demonstrate that any false statement was "necessary to the finding of probable cause . . . ." See ibid.

Czajka's misstatements were not material. First, the misstatement of the number of video clips Czajka viewed—whether one or two—is not significant. In either instance, Czajka ceased viewing the videos once he was able to determine the description of the putative owner of the camera. Second, the warrant-issuing judge would have still issued the search warrant sans any information in the affidavit regarding what the videos depicted.

In addition, any misstatement regarding whether the investigation led police to believe defendant transferred photos to other devices is immaterial.

Likewise, whether defendant's statement elicited during questioning is part of the police's "investigation" is irrelevant and immaterial.

IV.

We affirm the denial of defendant's motion for reconsideration substantially for the reasons stated by the judge in his thorough January 31, 2020 written statement of reasons. For the reasons we have already expressed, the denial of defendant's motion does not warrant further discussion in a written opinion. R. 2:11-3(e)(2).

V.

Finally, we address defendant's argument that the trial court improperly used general deterrence alone to impose an overly harsh sentence. He contends that because the relevant mitigating factors greatly outweighed the aggravating factors, the court should not have imposed a jail term as a condition of probation. We are unpersuaded.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). We determine "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). To do so, we review the record developed at the sentencing hearing and the

31

explanation the judge gave in support of the sentence to determine whether "the aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced . . . ." State v. Case, 220 N.J. 49, 65 (2014). If the trial judge does so, we must affirm the sentence provided that it "does not 'shock the judicial conscience.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 365 (1984)). "On the other hand, if the trial court fails to [do so,] . . . the deferential standard will not apply." Ibid.

The judge found aggravating factors three and nine and mitigating factors seven, nine, ten, and twelve. He rejected mitigating factors one, two, and eight. The judge did not place significant weight on mitigating factors nine and twelve and found the aggravating factors slightly outweighed the mitigating factors. The record supports those findings.

As to mitigating factor one, the judge noted that the psychologist retained by defendant opined that "[o]n occasion," defendant "may become frustrated by circumstances outside of his control and may react to what appears to him to be unusual, adversarial situations. This is what happened in the current situation."

As to mitigating factor two, the psychologist's report stated that defendant "truly did not consider the consequences of his actions." If true, the failure to comprehend the seriousness of his conduct supports a finding that he needed to

be deterred and posed a risk of reoffending. However, defendant told the psychologist that the staff captured on the videos "must be feeling outrage, anxiety, embarrassment, and fear." The judge rejected defendant's claim that he "did not contemplate that his conduct would cause or threaten serious harm." Regarding mitigating factor eight, the judge noted that the psychologist recommended that defendant undergo cognitive behavioral treatment despite his other conclusions.

As to aggravating factor three, the judge noted that the psychologist recommended that defendant undergo cognitive behavioral therapy. The judge emphasized that there were multiple employees recorded using the bathroom over the course of approximately six months. The court concluded there was a risk defendant would reoffend.

As to aggravating factor nine, the judge found the need for specific and general deterrence. The judge found defendant's behavior unacceptable and that it could not be tolerated. "It demonstrated extremely poor judgment and a total disregard and a violation of vulnerable and unsuspecting victims." He concluded there was a need for deterring both defendant and the public at large.

The judge recognized defendant had no prior convictions and had successfully completed a pre-trial intervention program approximately twenty

33

years earlier, resulting in the dismissal of those charges. He further noted the psychologist opined that defendant would benefit from community supervision and cognitive behavioral treatment.

Aggravating factor nine is not precluded in a case in which the defendant had no prior convictions and mitigating factor seven is applied. Fuentes, 217 N.J. at 80. "Neither the statutory language nor the case law suggest that a sentencing court can find a need for deterrence under [aggravating factor nine] only when the defendant has a prior criminal record." Ibid.

Defendant contends the judge improperly considered the psychologist's recommendation that he undergo cognitive behavioral therapy as evidence of his risk of reoffending. He argues the psychologist found he lacks the risk factors for reoffending and violation of probation, and "has many of the protective [factors] that are correlated with a low recidivism rate and likelihood of success on probation." The judge was not bound to accept that opinion; he was free to accept or reject it, in whole or in part, and to give it as much weight as he deemed appropriate, "even if it is unrebutted by any other evidence." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430-31 (App. Div. 2001).

Aggravating factor three was applied due to the ongoing nature of the crimes, affecting numerous victims over a six-month period, in addition to

34

defendant's need for cognitive behavioral therapy. We discern no error in considering the need for cognitive behavioral therapy, which had not yet begun, when assessing the risk of reoffending. "A court's findings on the risk of re-offense should 'involve determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history.'" State v. Locane, 454 N.J. Super. 98, 125 (App. Div. 2018) (quoting State v. Thomas, 188 N.J. 137, 153 (2006)).

When sentencing a defendant to probation, the court "shall attach such reasonable conditions . . . as it deems necessary to insure that [defendant] will lead a law-abiding life or is likely to assist him to do so." N.J.S.A. 2C:45-1(a). To that end, the court may require the defendant to undergo available psychiatric treatment as a condition of probation. N.J.S.A. 2C:45-1(b)(3). Here, as a condition of probation, the judge required defendant to undergo the cognitive behavioral treatment recommended by his psychologist. Implicit in imposing this condition was a finding that the treatment was necessary to reduce the risk of reoffending. See N.J.S.A. 2C:45-1(a).

Defendant pled guilty to twelve third-degree crimes, each of which was subject to an ordinary term of three-to-five years of imprisonment. N.J.S.A. 2C:43-6(a)(3). The crimes involved numerous victims, occurred over the course

35

of six months, and continued until the camera was detected and removed. "A sentence imposed pursuant to a plea agreement is presumed to be reasonable," so long as it "comports[s] with the sentencing provisions of our Code of Criminal Justice." Fuentes, 217 N.J. at 70-71. Here, the sentence comported with the Code. It was supported by credible evidence in the record and was not excessive, let alone manifestly excessive, in light of defendant's conduct, which presumably would have persisted had someone not detected the camera. Indeed, the "jail term" defendant received was to be served by participation in SLAP, which allows offenders to "provid[e] physical labor as an alternative to incarceration." N.J.S.A. 2B:19-5(c)(1). The sentence was not unduly punitive and does not shock the judicial conscience. We discern no basis to disturb it.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION